**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x
:
Julian Foster, individually and on behalf of    :
all others similarly situated,                            :   CASE NO.  1:22-cv-1240
:
:
Plaintiff,                           :
:
v.                                          :   **CLASS ACTION COMPLAINT**
:
:   <u>**JURY TRIAL DEMANDED**</u>
Whole Foods Market, Inc.,                          :
:
Defendant.                         :
:
---------------------------------------------------------- x

Plaintiff Julian Foster ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his attorneys, bring this Class Action Complaint against Whole Foods Market, Inc. ("Defendant"), based upon personal knowledge as to himself, and upon information, investigation and belief of his counsel.

**SUMMARY OF THE ACTION**

1. This class action seeks to challenge Defendant's false and deceptive practices in the marketing and sale of its 365 Whole Foods Market 100% Wild-Caught Fish Oil softgels product (the "Product").

2. Specifically, the front label of each Product explicitly states as follows: "Omega-3s EPA & DHA 1000mg Per Serving". This representation leads reasonable consumers to believe that each serving of the Product contains 1000mg of Omega-3s.

3. However, unbeknownst to consumers, each serving of the Product only contains 300mg of Omega-3s.

1

4. Plaintiff purchased the Product and paid a premium price based upon his reliance on Defendant's front label representations. Had Plaintiff and Class members been aware that the Product does not contain the amount of Omega-3s per serving promised on the front label, Plaintiff and Class members would not have purchased the Product or would have paid significantly less for it. Accordingly, Plaintiff and Class members have been injured by Defendant's deceptive business practices.

## PARTIES

### I. Plaintiff

5. Plaintiff Julian Foster is a citizen of New York and currently resides in Brooklyn, New York. In late 2021, Plaintiff purchased the Product from a Whole Foods in Williamsburg, New York. In purchasing the Product, Plaintiff saw the "Omega-3s EPA & DHA 1000mg Per Serving" representation on the front label of the Product. Based on this representation, Plaintiff reasonably believed that each serving of the Product contained 1000mg of Omega-3. Had he known that each serving of the Product did not contain 1000mg of Omega-3, but instead only 300mg of Omega-3, he would not have purchased the Product or would have paid substantially less for it.

6. Despite Defendant's misrepresentations, Plaintiff would purchase the Product, as advertised, if it did in fact contain 1000mg of Omega-3 per serving. Although Plaintiff regularly purchases Omega-3 supplements, absent an injunction prohibiting Defendant's deceptive advertising, he will be unable to rely with confidence on Defendant's advertising of the Product in the future. Furthermore, while Plaintiff currently believes the Product does not contain 1000mg of Omega-3 per serving, he lacks personal knowledge as to Defendant's

specific business practices, as he will not be able determine whether the Product contains 1000mg of Omega-3 per serving. This leaves doubt in his minds as to the possibility that at some point in the future the Product could contain 1000mg of Omega-3 per serving. This uncertainty, coupled with his desire to purchase the Product, is an ongoing injury that can and would be rectified by an injunction enjoining Defendant from making the alleged misleading representations. In addition, absent an injunction, other Class members will continue to purchase the Product, reasonably but incorrectly, believing it contains "Omega-3s EPA & DHA 1000mg Per Serving", when it does not.

## II. Defendant

7.      Defendant Whole Foods Market, Inc. is a Texas corporation with its headquarters in Austin, Texas. Defendant is responsible for the formulation, ingredients, manufacturing, naming, marketing, labeling, packaging, and sale of the Product in the United States, including in this District.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. §1332(d) in that: (1) this is a class action involving more than 100 Class members; (2) the parties are minimally diverse, as members of the proposed class are citizens of states different than Defendant's home state; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

9.      This Court has personal jurisdiction over Defendant because it conducts and transacts substantial business in New York, and intentionally and purposefully placed the Product into the stream of commerce within New York.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Namely, Plaintiff purchased the Products in this District.

**FACTUAL BACKGROUND**

A. **Defendant Misleads Consumers About the Amount of Omega-3s In Each Serving of the Products**

11. As demonstrated below, Defendant conspicuously displays the following representation on the front label of each Product: "Omega-3s EPA & DHA 1000mg Per Serving":



12. As depicted above, the "1000mg Per Serving" representation is immediately below the "Omega-3s EPA & DHA" representation, and both representations are in the same font size and color.

13. Based on this representation, reasonable consumers are led to believe that each serving of the Product contains 1000mg of Omega-3.

14. Unbeknownst to consumers, the Product does not contain 1000mg of Omega-3 per serving, but only 300mg of Omega-3 per serving.

15. Thus, consumers are being grossly misled regarding the amount of Omega-3s per serving in the Product.

**B.     Defendant's False And Deceptive Practices Harms Consumers**

16. Plaintiff and other consumers purchased the Product relying on Defendant's front label representations.

17. The reasonable belief held by Plaintiff and consumers that the Products contain the amount of Omega-3s per serving represented on the Product's front label was a significant factor in each of their decisions to purchase the Product.

18. Plaintiff and Class members did not know, and had no reason to know, that the Product does not contain the amount of Omega-3s per serving represented on the Product's front label.

19. As the entity responsible for the development, manufacturing, packaging, advertising, distribution and sale of the Product, Defendant knew or should have known that the Product falsely and deceptively represents the amount of Omega-3s per serving.

20. Defendant also knew or should have known that Plaintiff and other consumers, in purchasing the Product, would rely on Defendant's front label representations. Nonetheless, Defendant deceptively advertises the Product in order to deceive consumers into believing that they are getting considerably more Omega-3s per serving.

21. Consumers are willing to pay more for the Product based on the belief that the Product contains "Omega-3s EPA & DHA 1000mg Per Serving" as promised on the front label. Plaintiff and other consumers would have paid significantly less for the Product, or would not have purchased it at all, had they known that they were getting less Omega-3s per serving than what is promised on the Product's front label.

22. Omega-3 fatty acids are an "essential fat, which means they are needed to survive."[1] They supply significant health benefits to consumers, "provid[ing] the starting point for making hormones that regulate blood clotting, contraction and relaxation of artery walls, and inflammation."[2] Consumers are increasingly interested in purchasing Omega-3 supplements, with the Omega-3 market in the United States valued at over $500 million and growing at a rate of 7.4%.[3]

23. Therefore, Plaintiff and other consumers purchasing the Products have suffered injury in fact and lost money as a result of Defendant's false and deceptive practices, as described herein.

24. Through the use of misleading representations, Defendant commands a price that Plaintiff and the Class would not have paid had they been fully informed. Had Plaintiff been aware that the Product did not contain "Omega-3s EPA & DHA 1000mg Per Serving," he would have purchased a different product or paid significantly less for the Product. Alternatively, had Plaintiff been aware that the Product did not contain "Omega-3s EPA & DHA 1000mg Per Serving", he would not have purchased the Product at all.

---

[1] Cleveland Clinic, *Omega-3 Fatty Acids*, https://my.clevelandclinic.org/health/articles/17290-omega-3-fatty-acids (last visited February 13, 2021).
[2] Harvard T.H. Chan, *Omega-3 Fatty Acids: An Essential Contribution*, https://www.hsph.harvard.edu/nutritionsource/what-should-you-eat/fats-and-cholesterol/types-of-fat/omega-3-fats/ (last visited February 13, 2021).
[3] Grand View Research, *Omega 3 Market* Size, https://www.grandviewresearch.com/industry-analysis/omega-3-market (last visited February 13, 2021).

25. By the use of misleading representations, Defendant created increased market demand for the Product and increased its market share relative to what its demand and share would have been had it marketed the Product truthfully.

26. Plaintiff and members of the Class were exposed to and justifiably relied upon the same material misrepresentations and harm throughout the class period, as (1) the foregoing deceptive representations appear on all the Products, and (2) none of the Products contain "Omega-3s EPA & DHA 1000mg Per Serving."

## CLASS DEFINITION AND ALLEGATIONS

27. Plaintiff brings this matter on behalf of himself and those similarly situated. Pursuant to Rule 23 of the Federal Rules of Civil Procedure (the "Rules" or "Rule"), Plaintiff seeks to represent the following class:

> All residents of the United States who purchased the Product for personal, family, or household consumption and not for resale within the applicable statute of limitation ("Nationwide Class").

28. Additionally, as further described herein, Plaintiff brings claims based upon the New York consumer protection laws on behalf of the following subclass:

> All residents of New York who purchased the Product in New York for personal, family, or household consumption and not for resale within the applicable statute of limitation ("New York Subclass").

29. The Nationwide Class and New York Subclass are referred to collectively as the "Class" or "Classes."

30. Plaintiff reserves the right to amend the Class definitions if discovery or further investigation reveal that any Class should be expanded or narrowed, divided into additional subclasses under Rule 23(c)(5), or modified in any other way.

31. The following people and entities are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

32. This action is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

33. **Numerosity:** Members of each Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. The precise number of Class members is unknown to Plaintiff but is likely to be ascertained by the Defendant's records. At a minimum, there likely are tens of thousands of Class members.

34. **Commonality:** There are questions of law and fact common to the proposed class(es). Common questions of law and fact include, without limitations:

   a. whether Defendant's course of conduct alleged herein violates the statutes and other laws that are pled in this Complaint;

   b. whether reasonable consumers would rely upon Defendant's representations about the Product and reasonably believe the Product contains 1000mg of Omega-3 per serving;

  c. whether Defendant knew or should have known its representations were false or misleading;

  d. whether Defendant was unjustly enriched by retaining monies from the sale of the Products;

  e. whether certification of each Class is appropriate under Rule 23;

  f. whether Plaintiff and the members of each Class are entitled to declaratory, equitable, or injunctive relief, and/or other relief, and the scope of such relief; and

  g. the amount and nature of the relief to be awarded to the Plaintiff and the Class, including whether Plaintiff and the Class are entitled to punitive damages.

35. **Typicality:** Plaintiff's claims are typical of the other Class members because Plaintiff, as well as Class members, purchased the Product. Plaintiff and the members of the Classes relied on the representations made by the Defendant about the Product prior to purchasing the Product. Plaintiff and the members of each Class paid for Defendant's Product and would not have purchased them (or would have paid substantially less for them) had they known that the Defendant's representations were untrue.

36. **Adequacy:** Plaintiff will fairly and adequately protect the interests of the proposed Classes as his interests do not conflict with the interests of the members of the proposed Classes he seeks to represent, and he has retained counsel competent and experienced in class action litigation. Thus, the interests of the members of the Classes will be fairly and adequately protected by Plaintiff and his counsel.

37. **Predominance:** Pursuant to Rule 23(b)(3), the common issues of law and fact identified in this Complaint predominate over any other questions affecting only individual

members of the Classes. Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's misconduct detailed at length in this Complaint.

38. **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of hundreds of thousands of individual claims in separate lawsuits, every one of which would present the issues presented in the Complaint/lawsuit. Further, because of the damages suffered by any individual Class member may be relatively modest in relation to the cost of litigation, the expense and burden of individual litigation make it difficult, if not impossible. Furthermore, many of the Class members may be unaware that claims exist against the Defendant.

39. **Declaratory and Injunctive Relief:** Pursuant to Rule 23(b)(2), declaratory and injunctive relief is appropriate in this matter. Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class members as a whole. Unless a class-wide injunction is issued, Defendant will continue to advertise, market, promote, and sell the Product in an unlawful and misleading manner, as described throughout this Complaint, and members of the Classes will continue to be misled, harmed, and denied their rights under the law.

## CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF**
**VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349**
*(On Behalf of Plaintiff and New York Subclass Members)*

40. Plaintiff repeats and realleges Paragraphs 1-39 as if fully set forth herein.

41. New York General Business Law ("GBL") § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state."

42. The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages and the entry of preliminary and permanent injunctive relief against Defendant, enjoining them from inaccurately describing, packaging, marketing, and promoting the Product.

43. Defendant misleadingly, inaccurately, and deceptively advertise and market its Product to consumers.

44. Defendant's improper consumer-oriented conduct—including labeling and representing that the Product contains 1000mg of Omega-3 per serving —is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase and pay a premium for Defendant's Product and to consume the Product when they otherwise would not have. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

45. Plaintiff and the New York Subclass Members have been injured inasmuch as they paid a premium for product that did —contrary to Defendant's representations—not contain 1000mg of Omega-3 per serving. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

46. Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

47. As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, compensatory, statutory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**SECOND CLAIM FOR RELIEF**
**VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 350**
*(On Behalf of Plaintiff and the New York Subclass Members)*

48. Plaintiff repeats and realleges Paragraphs 1-39 as if fully set forth herein.

49. New York General Business Law § 350 provides, in part, as follows: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

50. GBL § 350-a(1) provides, in part, as follows:

> The term "false advertising" means advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual. …

51. Defendant's representation on the labeling of the Product that the Product contains "Omega-3s EPA & DHA 1000mg Per Serving" is a materially misleading representation inasmuch as they misrepresent that the Product contains "Omega-3s EPA & DHA 1000mg Per Serving" when it does not.

52. Plaintiff and the New York Subclass Members have been injured inasmuch as they relied upon the labeling of the Product and paid a premium for product that did —contrary to Defendant's representations—not contain 1000mg of Omega-3 per serving. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

53. Defendant's labeling of the Products induced Plaintiff and the New York Subclass Members to buy Defendant's Product. Thus, Defendant made material misrepresentations about the Product.

54. Defendant made the foregoing untrue and/or misleading representations willfully, wantonly, and with reckless disregard for the truth.

55. Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Product were and continue to be exposed to Defendant's material misrepresentations.

56. As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, compensatory, statutory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**THIRD CLAIM FOR RELIEF**
**VIOLATIONS OF BREACH OF EXPRESS WARRANTY STATUTES**
*(On behalf of Plaintiff and the New York Subclass)*

57. Plaintiff repeats and realleges Paragraphs 1-39 as if fully set forth herein.

58. Plaintiff brings this claim on behalf of himself and the New York Subclass for breach of express warranty under N.Y. U.C.C. Law § 2-313.

59. Plaintiff and members of the New York Subclass formed a contract with Defendant at the time they purchased the Product. As part of that contract, Defendant represented on the front label of the Product that the Product contains "Omega-3s EPA & DHA 1000mg Per Serving".

60. This representation constitutes an express warranty and became part of the basis of the bargain between Plaintiff and members of the New York Subclass, on the one hand, and Defendant, on the other.

61. Defendant made the representation to induce Plaintiff and members of the New York Subclass to purchase the Product, and Plaintiff and the New York Subclass relied on the representations in purchasing the Product.

62. All conditions precedent to Defendant's liability under the above-referenced contract have been performed by Plaintiff and the New York Subclass.

63. Express warranties by a seller of consumer goods are created when an affirmation of fact or promise is made by the seller to the buyer, which relates to the goods and becomes the basis of the bargain. Such warranties can also be created based upon descriptions of the goods which are made as part of the basis of the bargain that the goods shall conform to the description.

64. Defendant breached the express warranties about the Product because, as alleged above, the Product does not contain "Omega-3s EPA & DHA 1000mg Per Serving", but only 300mg of Omega-3s per serving.

65. As a result of Defendant's breaches of express warranty, Plaintiff and the New York Subclass members were damaged in the amount of the premium price they paid for the Product, in amounts to be proven at trial.

66. In late 2021, Plaintiff discovered this breach. On January 20, 2022, Plaintiff, on behalf of himself and others similarly situated, sent a notice and demand letter to Defendant providing notice of Defendant's breach.

### FOURTH CLAIM FOR RELIEF
### IN THE ALTERNATIVE, UNJUST ENRICHMENT
*(On behalf of Plaintiff and the Nationwide Class, or in the alternative, the New York Subclass)*

67. Plaintiff repeats and realleges Paragraphs 1-39 as if fully set forth herein.

68. To the extent the Court finds that Plaintiff and the members of the Classes did not form a contract with Defendant at the time they purchased the Product, Plaintiff brings this claim for unjust enrichment in the alternative, individually and on behalf of the Nationwide Class, or in the alternative, the New York Subclass.

69. Plaintiff and Nationwide Class members purchased Defendant's Product and paid a premium for the Product. The Product misrepresented that the Product contained "Omega-3s EPA & DHA 1000mg Per Serving", which commanded a price premium.

70. Defendant had knowledge of such benefit and obtained the benefit by its misrepresentation because the misrepresentation induced reasonable consumers to purchase the Product they would not otherwise have purchased or purchased at the advertised price.

71. Defendant appreciated this benefit and knowingly accepted it at the expense of, and to the detriment of, Plaintiff and Nationwide Class members. Defendant currently retains this benefit.

72. Defendant's acceptance and retention of the benefits is inequitable and unjust because the benefit was obtained by Defendant's misconduct detailed at length in this Complaint.

73. Equity cannot in good conscience permit Defendant to be economically enriched for such action at the expense of Plaintiff and Nationwide Class members, and therefore restitution and/or disgorgement of such economic enrichment is required.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of other members of the proposed Class(es), respectfully request that the Court enter judgment in Plaintiff's favor and against Defendant as follows:

a. Declaring that this action is a proper class action, certifying the Classes as requested herein, designating Plaintiff as Class Representative and appointing the undersigned counsel as Class Counsel;

b. A declaration or declaratory judgment that Defendant's conduct has violated and continues to violate the statutes and laws cited herein;

c. An order enjoining Defendant to refrain from the acts and practices cited herein and to undertake an immediate public information campaign to inform members of the Classes as to its prior practices;

d. An order requiring imposition of a constructive trust and and/or disgorgement of Defendant's ill-gotten gains and to pay restitution to Plaintiff and members of the Classes to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, fraudulent or unfair business act or practice;

e. An award of damages, including all available statutory and punitive damages, pursuant to the statutes and the causes of action pled herein;

  f. Distribution of any monies recovered on behalf of members of the Class via fluid recovery or *cy pres* recovery where necessary and applicable, to prevent Defendant from retaining the benefit of its wrongful conduct;

  g. an award of all recoverable costs and expenses, including reasonable fees for Plaintiff's attorneys; and

  h. an award of pre- and post-judgment interest to Plaintiff and members each of the Classes if applicable; and, ordering further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff and members of the Class demand a jury trial on all issues so triable.

**CUSTODIO & DUBEY, LLP**

Date: March 7, 2022

By: /s/ Robert Abiri

Robert Abiri (SBN 238681)
*E-mail: abiri@cd-lawyers.com*
445 S. Figueroa Street, Suite 2520
Los Angeles, CA 90071
Telephone: (213) 593-9095
Facsimile: (213) 785-2899

*Attorney for Plaintiff and the Putative Classes*