UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――――

JULIAN FOSTER, individually and on behalf of all others similarly situated

                Plaintiff,

– against –

WHOLE FOODS MARKET GROUP, INC.,

                Defendant.

―――――――――――――――――――――――――――

**NOT FOR PUBLICATION**

**MEMORANDUM & ORDER**

22-cv-01240 (ERK) (RML)

KORMAN, *J*.:

Plaintiff Julian Foster ("plaintiff") filed this action against defendant Whole Foods Market Group, Inc. ("WFM"), principally alleging that the front label of WFM's branded Fish Oil softgel product (the "Product") is false and deceptive because it suggests to a reasonable consumer that the Product contains 1000mg of two types of Omega-3s—Eicosapentaenoic Acid (EPA) and Docosahexanoiac Acid (DHA)—per capsule, when in fact the Product contains only 300mg of Omega-3s per capsule. Plaintiff has indicated his intent to seek class certification. WFM has moved to dismiss the First Amended Complaint ("FAC") under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. ECF No. 21.

1

## FACTUAL BACKGROUND

The front label of the Product at issue in the complaint appears as follows:



FAC ¶ 11.

Plaintiff alleges that the "1000mg Per Serving" statement on this label is false and misleading because it appears underneath "Omega-3s EPA and & DHA," suggesting that the Product contains 1000mg of those types of Omega-3s per serving. FAC ¶¶ 12-14. In fact, the Product actually contains 300mg of Omega-3s. FAC ¶14. The Supplement Facts located on the back label of the Product state that

the Product contains 1000mg of Fish Oil, 180mg of EPA, 120mg of DHA (the latter two ingredients adding up to 300mg of total Omega-3s):[1]

**Supplement Facts**
Serving Size 1 Softgel

| Amount Per Serving | | % Daily Value |
|---|---|---|
| Calories | 10 | |
| Calories From Fat | 10 | |
| Total Fat | 1g | 2%** |
| Cholesterol | 5mg | 2%** |
| Fish Oil (from anchovy, sardine, mackerel) | 1000mg | * |
| Eicosapentaenoic Acid (EPA) | 180mg | * |
| Docosahexaenoic Acid (DHA) | 120mg | * |

**Percent Daily Values are based on a 2,000 calorie diet.
*Daily Value not established.

OTHER INGREDIENTS: GELATIN, PURIFIED WATER, VEGETABLE GLYCERIN, MIXED TOCOPHEROLS (DERIVED FROM SOY TO PRESERVE FRESHNESS).
CONTAINS FISH (ANCHOVY, SARDINE, MACKEREL) AND SOY INGREDIENTS. PRODUCED IN A FACILITY THAT PROCESSES TREE NUTS, MILK, EGGS, SHELLFISH AND WHEAT.

Plaintiff alleges that he and those persons similarly situated were injured by WFM's false representations on the front label of the Product because they reasonably believed that the Product contained 1000mg of Omega-3s, and this information was a significant factor in their decisions to purchase the Product. FAC ¶¶ 16-18. Plaintiff also alleges that he and other consumers would have paid significantly less for the Product (or not purchased it at all) had they known that they

---

[1] The FAC provides a picture of only the front label of the Product. WFM asks in an unopposed motion that I take judicial notice of the entire label of the Product, including its back label. *See* ECF Nos. 21-2; 21-3.

3

were getting fewer than 1000mg of Omega-3s per serving. FAC ¶¶ 21-24. Plaintiff contends that WFM knew or should have known that consumers would rely on the front label's representations, and deceptively advertised and sold the Product nevertheless. FAC ¶ 19-20.

Plaintiff filed the original complaint in this action on March 7, 2022, alleging injury on his behalf and on behalf of the putative class under the following causes of action: (1) New York General Business Law ("GBL") § 349; (2) New York GBL § 350; (3) violations of New York's express warranty statute (N.Y. U.C.C. Law § 2-313); and (4) unjust enrichment.[2] ECF No. 1. Plaintiff filed the operative First Amended Complaint on April 15, 2022. ECF No. 14. In substance, the allegations in the FAC are identical to those stated in the original complaint; the parties stipulated to the amendment to allow plaintiff to change the defendant from Whole Foods Market, Inc. to Whole Foods Market <u>Group</u>, Inc., due to the court's lack of personal jurisdiction over the former corporate entity. *See* ECF No. 13.

## LEGAL STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true and

---

[2] The FAC seeks injunctive relief, but plaintiff, in a pre-motion letter, subsequently withdrew this claim without prejudice. *See* ECF No. 17. WFM nevertheless argues in its motion to dismiss that plaintiff lacks standing to obtain an injunction; plaintiff did not address this argument in his opposition. I consider plaintiff's claim for injunctive relief withdrawn.

4

drawing all reasonable inferences in the plaintiff's favor." *Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141, 145 (2d Cir. 2020). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bascuñán v. Elsaca*, 874 F.3d 806, 814 n.23 (2d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678). "Although a court must accept as true all the factual allegations in the complaint, that requirement is inapplicable to legal conclusions." *Vaughn*, 957 F.3d at 145 (internal quotation marks omitted).

## DISCUSSION

New York GBL Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. Gen. Bus. Law § 349(a). A "deceptive act" or practice is one that is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000). GBL Section 350 similarly prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. Gen. Bus. Law § 350. "[F]alse advertising means

5

advertising, including labeling . . . if such advertising is misleading in a material respect." *Id*. § 350-a(1). The standards under GBL Sections 349 and 350 are "substantively identical." *Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439, 451 (E.D.N.Y. 2007).

To establish a *prima facie* case under either section, a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result. *See Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015). To survive a motion to dismiss, a plaintiff "must plausibly allege that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled by the relevant statements." *Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701, 704 (2d Cir. 2020) (summary order) (internal quotation marks omitted).

**I.     The Statements on the Product's Label are Arguably Ambiguous, but any Ambiguity is Readily Resolved by the Information Provided on the Back Label of the Product.**

The second element of a *prima facie* case under GBL Sections 349 and 350, as applied here, is whether WFM's statements on the Product, taken as a whole, were materially misleading. The test is objective: whether the challenged conduct is "materially deceptive or misleading to a reasonable consumer acting reasonably under the circumstances." *Dash v. Seagate Tech. (U.S.) Holdings, Inc.*, 27 F. Supp.

6

3d 357, 360 (E.D.N.Y. 2014) (internal quotation marks omitted). "Courts view each allegedly misleading statement in light of its context on the product label or advertisement as a whole." *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 53 (E.D.N.Y. 2015) (internal quotation marks omitted). "In [this] analysis, font size, placement, or emphasis count." *Warren v. Whole Foods Market Group, Inc.*, 574 F. Supp. 3d 102, 115 (E.D.N.Y. 2021) (internal quotation marks omitted). Plaintiff's theory of deception here rests on a reasonable consumer reading the front label as misleading because it suggests that the Product contains 1000mg of Omega-3s per serving, when in fact it contains only 300mg of Omega-3s.

The four statements on the label—(1) "Omega-3s EPA & DHA," (2) "1000mg Per Serving," (3) "From Small Cold-Water Fish," and (4) "Molecularly Distilled"—are all listed in close proximity directly below the name of the Product (Fish Oil), and are all the same font, text size, and color. It is not unreasonable for a consumer to read the "1000mg Per Serving" statement on the front label as qualifying the "Omega-3s EPA & DPA" statement above it, and then to read the two additional statements below as independent qualities of the Product.

Plaintiff argues that the Supplement Facts box on the Product's back label specifying the precise amount of Omega-3s the Product contains does not cure the misrepresentation on the front label, principally citing the Second Circuit's holding in *Mantikas v. Kellogg Co.*, 910 F.3d 633, 637 (2d Cir. 2018). In *Mantikas*, the

7

Second Circuit held that "a reasonable consumer should not be expected to consult the Nutrition Facts panel on the side of the box to correct misleading information set forth in large bold type on the front of the box." *Id.* at 637. In adopting the holding of a similar case from the Ninth Circuit, the Second Circuit concluded that:

> [R]easonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box. Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that *confirms* other representations on the packaging.

*Id*. (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) (internal citation and quotation marks omitted)).

Since *Mantikas*, however, district courts within the Second Circuit have continued to recognize that "clarification can defeat [a] claim" for deceptive packaging if a front label contains an ambiguous representation, whereas *Mantikas* held that clarification cannot correct an *unambiguously* misleading representation. *See, e.g.*, *Reyes v. Crystal Farms Refrigerated Distrib. Co.*, 2019 WL 3409883, at *3 (E.D.N.Y. July 26, 2019) (concluding that a statement on the front of pre-packaged mashed potatoes that the product was "made with real butter" was merely ambiguous, and any "confusion [was] sufficiently dispelled by the ingredients label on the back of the package," which showed that the product was made with both real butter and butter-substitute fats); *Sarr v. BEF Foods, Inc.*, 2020 WL 729883, at *4 (E.D.N.Y. Feb. 13, 2020) (same).

8

Here, the statement "1000mg Per Serving" is ambiguous, because it appears beneath the "Omega-3s EPA & DHA," but above "From Small Cold-Water Fish" and "Molecularly Distilled," the latter two statements describing the Product that WFM was selling—fish oil—as a whole. But this ambiguity is resolved by the Supplement Facts provided on the back of the Product, which states that the Product contains 180mg of EPA and 120mg of DHA, for a total of 300mg of Omega-3s.[3] The Product's label is distinguishable from the cracker package at issue in *Mantikas*, which the Second Circuit noted contained *unambiguously* misleading information, including that the front label "falsely impl[ied] that the grain content is entirely or at least predominantly whole grain," and that the back label did not provide any information as to the actual "ratio of whole grain to white flour." 910 F.3d at 637.

In a recent analogous case in this district, my colleague Judge Komitee dismissed a comparable GBL deceptive packaging claim, concluding that a reasonable consumer would not be misled by two independent statements on the front label of a ChapStick product, despite the statements' close proximity. *See Engram v. GSK Consumer Healthcare Holdings (US) Inc.*, 2021 WL 4502439 (E.D.N.Y. Sept. 30, 2021). The *Engram* plaintiff principally argued that the two statements appearing in a circle on the front label of the product—"8 Hour Moisture"

---

[3] If "1000mg Per Serving" appeared below "Fish Oil" (but above "Omega-3s EPA & DHA"), however, the label would have suggested that it was referring to the amount of fish oil per serving, rather than the amount of EPA and DHA.

9

and "SPF 15"—though independently true, were false and misleading because, given their proximity, a reasonable consumer would conflate them and incorrectly understand that the product would provide eight hours of sun protection.[4] Judge Komitee concluded that the "8 Hour Moisture" statement was "plain[ly] … emphasizing the moisturizing properties of the product," noting that the word "moisturizer" separately appeared on the label in all capital letters. *Id.* at *5. Moreover, the front of the package did not make any claims about the duration of the SPF protection. *See id*. Therefore, the "8 Hour Moisture" statement was not likely to mislead reasonable consumers about the length of sun protection, because the *Engram* plaintiff's interpretation was "inconsistent with the face of the package, and with common sense." *Id*.

While Judge Komitee concluded that the "8 Hour Moisture" and "15 SPF" statements on the ChapStick label were not misleading, he also identified and considered the clarifying statements on the back label that would cure any ambiguity, including directions to "apply [the product] liberally 15 minutes before sun exposure," and to "reapply at least every 2 hours"—both of which contradicted the plaintiff's theory that the product purported to provide eight hours of sun protection.

---

[4] As discussed below, the ChapStick's back label in *Engram* provided additional context clarifying that the product likely provided approximately two hours of sun protection.

10

*Id.* Indeed, in rejecting plaintiff's expansive interpretation of *Mantikas*, Judge Komitee stated that:

> There is a spectrum of advertising claims from factual claims that are absolutely true, at the one end, to (moving along the spectrum) ambiguous claims, to misleading claims, to claims that are outright false — and everything in between. I read *Mantikas* to address the latter end of that spectrum: specifically, to say that contextual information on the reverse of a product's packaging cannot overcome bold and blatant misstatements on the front.

*Id.* at *4.

I am persuaded by this analysis. *Mantikas* is inapposite because here the statements on the Product's front label, while ambiguous, are not false. More significantly, the context provided on the Product's back label stating the exact amount of Omega-3s is sufficient to clarify any arguable ambiguity contained on the front label. I therefore dismiss plaintiff's GBL claims. *See Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) ("It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer.").[5]

## II. Breach of Express Warranty and Unjust Enrichment

To state a claim for breach of express warranty, under New York law, a complaint must allege facts showing: "(1) the existence of a material statement

---

[5] Because plaintiff fails to allege the requisite element that the statements on the Product were materially misleading, I need not reach the question of whether plaintiff has sufficiently pled injury under the GBL.

11

amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach." *Klausner v. Annie's, Inc.*, 2022 WL 204356, at *6 (S.D.N.Y. Jan. 24, 2022) (quoting *Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235, 249 (S.D.N.Y. 2021)). Here, because plaintiff's theory of deception for his breach of express warranty claim relies on the same defective argument as the GBL claims regarding the purportedly misleading statements contained on the Product's label, the FAC likewise fails to state a claim as to this cause of action. *See Tomasino v. Estee Lauder Cos. Inc.*, 44 F. Supp. 3d 251, 263 (E.D.N.Y. 2014) ("Because the plaintiff's breach of warranty claims are based on the same conclusory allegations as her §§ 349 and 350 claims, they do not provide a sufficient factual basis to establish a plausible breach.").

"Where a deceptive trade practices claim fails for failure to allege deception, an unjust enrichment claim fails, too." *Kennedy v. Mondelēz Global LLC*, 2020 WL 4006197, at *15 (E.D.N.Y. July 10, 2020) (citing *Axon*, 813 F. App'x at 706); *see also Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (noting that duplicative claims for unjust enrichment will not survive a motion to dismiss "even [when] pleaded in the alternative"). "[I]f plaintiffs' other claims are defective, an unjust enrichment claim cannot remedy the defects." *Corsello v. Verizon N.Y., Inc.*, 944 N.Y.S.2d 732, 791 (2012). Because the FAC does not plausibly allege a deception,

it cannot state a claim for unjust enrichment. *See Harris v. Mondelēz Global LLC*, 2020 WL 4336390, at *3 (E.D.N.Y. July 28, 2020) (dismissing claim for unjust enrichment in misleading product case where unjust enrichment claim was premised on the rejected theory of misrepresentation); *see also Engram*, 2021 WL 4502439 at *7 (same); *Izquierdo v. Mondelez Int'l, Inc.*, 2016 WL 6459832, at *10 (S.D.N.Y. Oct. 26, 2016) ("Here, all of Plaintiffs' causes of action have been dismissed. Their unjust enrichment claim cannot cure the failings of their other causes of action.").

Even if plaintiff had adequately alleged that the statements on the Product's labeling were actually false or misleading, his claim for unjust enrichment is dismissed as duplicative of his tort claims. "An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello*, 944 N.Y.S.2d at 790. Moreover, unjust enrichment is an equitable claim that is unavailable where an adequate remedy at law exists. *See Fed. Treasury Enter. Sojuzplodoimport v. Spirits Intern. N.V.*, 400 F. App'x 611, 613 (2d Cir. 2010) (summary order) (citing *Lucente v. Int'l Bus. Mach. Corp.*, 310 F.3d 243, 262 (2d Cir. 2002)). With respect to deceptive packaging cases in particular, other courts within the Second Circuit have dismissed unjust enrichment claims when they have relied on the same facts as the plaintiff's other causes of action. *See, e.g.*, *Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 393-94 (S.D.N.Y. 2021) (unjust

13

enrichment claim dismissed as "mere repackaging" of other claims); *Sarr*, 2020 WL 729883, at *10 (collecting cases).

### III. Leave to Amend

Plaintiff requests leave to amend his complaint in the event that WFM's motion is granted, but does not offer any explanation of what new allegations might be added that would cure the FAC's pleading deficiencies regarding how the Product's label is materially misleading to a reasonable consumer. "A plaintiff need not be given leave to amend if it fails to specify . . . how amendment would cure the pleading deficiencies in its complaint." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014). Because plaintiff's "substantive problem [can] not be cured through better pleadings," leave to amend is denied as futile. *Morales v. N.Y. City Dep't of Educ.*, 808 F. App'x 35, 38 (2d Cir. 2020) (summary order) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)); *see also Harris*, 2020 WL 4336390, at *3 (denying leave to amend as futile in misleading product case where plaintiff failed to allege any statement that would mislead a reasonable consumer); *Melendez v. ONE Brands, LLC*, 2020 WL 1283793, at *9 (E.D.N.Y. Mar. 16, 2020) (denying leave to amend where no reasonable consumer could have been misled by the challenged statement).

## **CONCLUSION**

WFM's motion to dismiss is granted. Plaintiff's claims are dismissed with prejudice.

**SO ORDERED.**

|  |  |
|---|---|
| Brooklyn, New York | *Edward R. Korman* |
| February 3, 2023 | Edward R. Korman |
|  | United States District Judge |